AFFIDAVIT OF JOSHUA BEN MAYERS
IN SUPPORT OF CRIMINAL COMPLAINT (SEALED)

I, Joshua Ben Mayers, being first duly sworn on oath, deposes and states as follows:

Introduction and Agent Background

1. I have been a Federal Bureau of Investigation (FBI) Special Agent for 22 years. During this time, I have worked on a wide variety of Federal criminal investigations, including but not limited to, white collar crime, including wire and mail fraud; cyber crime, including child pornography and other computer related crimes; and foreign counterintelligence, including espionage. I have had training in all of these areas and have executed Federal search warrants on email accounts, personal computers, and corporate servers.

2. I have participated in this investigation, reviewed written reports, and discussed the case with other law enforcement officers, business executives, and employees of the victim company. I believe that the law enforcement officers, the business executives, and victim company employees are all credible because their information has been corroborated by: (a) the information already found stored within the Charlestown, Scituate, and Fairhaven, Massachusetts wind turbines; (b) the forensic examination of electronic media discussed below; and (d) Dejan Karabasevic's confession. I have also reviewed a comprehensive report prepared by a multinational consulting corporation that acted, in this case, as private corporate fraud investigators. I believe the facts related in the comprehensive report to be reliable for the same reasons

I trust the facts related to me by the representatives of the victim company. Based on this information and on my training and experience, I am providing the following information in support of the attached criminal complaint. This complaint affidavit does not reflect the entirety of the investigation, but rather, I am focusing on those facts relating to the proposed charge against Sinovel Wind Group Co., Ltd. (Sinovel), a wind turbine manufacturer located in the People's Republic of China.

3. As is detailed herein, the Federal Bureau of Investigation (FBI) and the United States Attorney's Office for the Western District of Wisconsin is investigating Dejan Karabasevic (aka Dan Karabasevic), Sinovel, two Sinovel employees, Su Liying and Zhao Haichun,[1] and others associated of Sinovel for numerous crimes, including: theft of trade secrets, under Title 18, United States Code, Section 1832.

4. On February 21, 2012, this Court authorized a three count criminal complaint against Dejan Karabasevic (Karabasevic). The complaint alleged that Karabasevic committed the following offenses: (1) wire fraud in violation of Title 18, United States Code Section 1343 by knowingly executing a scheme to defraud his employer, AMSC, and to deprive AMSC of its right to Karabasevic's honest services (Count 1); (2) unauthorized computer access in violation of Title 18, United States Code Sections 1030(a)(2)(C) and (c)(2)(B)(i), by intentionally accessing a computer without authorization and exceeding authorized access to that computer in Middleton,

---

[1] Su Liying worked as a Deputy Director in Sinovel's Research and Development Department. Zhao Haichun worked as a Technology Manager for Sinovel.

Wisconsin, for commercial advantage or private financial gain (Count 2); and (3) unauthorized access to further a scheme to defraud in violation of Title 18, United States Code Sections 1030(a)(4) and (c)(3)(A) by knowingly and with the intent to defraud obtain something of value, specifically technical information, software, and source code information relating to AMSC products that regulate the flow of electricity from wind turbines (Count 3). Along with the criminal complaint, this Court signed a warrant for Karabesevic's arrest. The complaint, accompanying affidavit, and arrest warrant are sealed.

5. On November 5, 2012, this Court authorized a second complaint against Karabasevic. This complaint alleged that Karabasevic committed the following offenses: (1) unauthorized computer access in violation of Title 18, United States Code Sections 1030(a)(2)(C) and (c)(2)(B)(i), by intentionally accessing a computer without authorization and exceeding authorized access to that computer in Middleton, Wisconsin, for commercial advantage or private financial gain (Count 1); and (2) conspiracy to commit, and caused to be committed, criminal copyright infringement (Count 2). Along with the second criminal complaint, this Court signed a warrant for Karabesevic's arrest. The complaint, accompanying affidavit, and arrest warrant are sealed.

6. In sum, the facts described in this affidavit show:

(a) Sinovel secretly recruited Karabasevic, an employee of an AMSC subsidiary located in Austria;

(b) Karabasevic unlawfully downloaded the source code for particular software from an AMSC Middleton, Wisconsin computer that was connected to the AMSC computer network;

(c) Karabasevic modified the source code and then provided a modified version of AMSC's software to Sinovel, thus eliminating Sinovel's need to purchase or license the software from AMSC;

(d) Forensic analysis demonstrates that Sinovel is using modified software derived from the source code unlawfully downloaded by Karabasevic from the computer located at the AMSC office in Middleton, Wisconsin;

(e) Karabasevic used Skype messaging service to communicate with Sinovel regarding code he stole and/or modified from AMSC and to discuss his employment with Sinovel;

(f) Karabasevic used emails to communicate with Sinovel regarding his employment with Sinovel, his salary, to provide Sinovel with the code he stole and/or modified from AMSC, and to discuss and send repairs for the stolen/modified code as needed; and

(g) A number of Sinovel employees used Yahoo!, Google, and Hotmail to conduct company business. Preliminary analysis of emails recovered from Karabasevic's computers and from search warrants authorized by this Court demonstrate that Sinovel continues to possess the modified

stolen code Karabasevic gave to Sinovel and Sinovel continues to use the stolen code for wind turbine retrofit projects in China.

The Facts

7. AMSC's corporate headquarters is in Devens, Massachusetts, with additional United States offices in Middleton and New Berlin, Wisconsin. According to William Vareka, a senior software manager for AMSC, in March 2011, AMSC stored a certain category of "source code" on a computer in the Middleton, Wisconsin office in the Western District of Wisconsin. The Middleton computer acted as a "server" within the AMSC computer network as it was dedicated in part to hosting and storing source code development folders for software designed to run on a particular tool. In this context, source code is a set of high-level computer commands that, once it is finalized, is sent to a "compiler." Vareka explained that the compiler is a computer program that transforms source code written in a programming language to binary code which can be used on a computer to perform the functions as directed by the software derived from the source code.

8. Among other things, AMSC produces equipment and software that regulate the flow of electrical energy from wind turbines to electrical grids. One AMSC product is software compiled from source code stored in Middleton, Wisconsin. This particular source code is identified as source code version 5650414_R1. According to AMSC software engineers, another AMSC proprietary software program, the "checksum generator," was also stored on the computer in the AMSC Middleton,

Wisconsin office. The "checksum generator" was necessary to run software compiled from source code version 5650414_R1. The "checksum generator" is a critical software tool created by AMSC to, among other things, make the compiled source code version 5650414_R1 operational.

9. Sinovel initially contracted to purchase software compiled from source code version 5650414_R1 for two reasons: (1) to retrofit a large number of existing wind turbines in China to comply with revised electrical grid requirements; and (2) to make newly-manufactured turbines safer and more efficient. According to Vareka, at some point during the summer or fall of 2010, AMSC discovered that a vulnerability in the software that allowed unauthorized access to AMSC's source code and, as a result, Sinovel was able to use the source code without authorization. Importantly, the vulnerability did not expose the PM3000 source code. Following this discovery, AMSC took measures–encryption and a 14-day limit for use of its software without a license--to protect its intellectual property. As a result of these protective measures, Sinovel could not use the new versions of the PM3000 software without contracting to do so with AMSC.

10. Daniel P. McGahn, AMSC President and Chief Executive Officer, John W. Powell, AMSC Vice President and General Counsel, and AMSC Attorney John Samia provided the information in paragraphs 10 through 12. Karabasevic, was employed by AMSC Windtec GmbH (AMSC Windtec), in Klagenfurt, Austria. Karabasevic started with Windtec as a development engineer in 2004. In 2007, AMSC acquired Windtec

which was then renamed AMSC Windtec. Karabasevic was eventually promoted to head of the Automation Engineering Department at AMSC Windtec. As an AMSC employee, Karabasevic certified his understanding, most recently on March 31, 2010, of AMSC's Code of Business Conduct and Ethics. That code required Karabasevic: to act in the best interests of AMSC; to avoid conflicts of interest; to not disclose confidential business information; to protect AMSC assets; and to not use AMSC assets for his or another's personal gain. In addition, Karabasevic acknowledged the AMSC Information Technology Policies on May 17, 2010. One of those policies prohibited use of the AMSC computer network to violate AMSC standards of ethics or to transmit proprietary information in any manner inconsistent with AMSC policies and directives. Karabasevic was not authorized to access AMSC computers to download its source code or other intellectual property, including but not limited to, the source code version 5650414_R1, nor was he authorized to distribute it to others.

11. Karabasevic's job required him to travel to China to support AMSC software and hardware on behalf of AMSC. Karabasevic's work in China put him in frequent contact with employees and representatives of Sinovel, which in March 2011, represented nearly 80 percent of AMSC's business. On March 10, 2011, Karabasevic resigned from AMSC Windtec. The resignation was accepted the following day. Karabasevic retained access to the AMSC Windtec office in Klagenfurt, Austria, and to the AMSC computer system, until approximately May 2011.

12. In late March 2011, Sinovel abruptly stopped paying for shipments from AMSC. Consequently, AMSC lost substantial revenue and was forced to lay off nearly half of its work force. As AMSC's revenues fell, its market value dropped from approximately $1.6 billion to approximately $200 million.

13. The comprehensive report prepared by the multinational consulting company, acting in this matter as private investigators (hereafter private investigators), indicates that on June 2 and June 10, 2011, AMSC China employees, while conducting field work on behalf of AMSC, discovered operational, unauthorized versions of AMSC software in use within Sinovel turbines at a wind farm in China. The unauthorized software was a version of AMSC's Low Voltage Ride Through (LVRT) software that AMSC had not released to Sinovel.[2] The software version that had been released to Sinovel was designed to contain a test period that allowed for its use for 14 days. The versions running on the Chinese wind farm were working well after the two-week test period had expired. The AMSC China employees copied and sent the unauthorized versions to AMSC Windtec, Klagenfurt, Austria. Examination of the unauthorized versions by AMSC employees showed that the software had been modified in two ways. First, the encryption was deactivated. Second, the 14-day test period limitation was disabled, allowing the software to be used without paying AMSC. As noted

---

[2] LVRT functionality is designed to keep the wind turbine operational when there is a sag or dip in the electrical grid. A sag or dip in the electrical grid occurs when the electrical system receiving electrical power from the wind turbine experiences a sudden drop in its ability to accept electrical power from the turbine.

above, this source code version development folder was only stored on a computer at the AMSC office in Middleton, Wisconsin. AMSC officials suspected that Karabasevic had provided the unauthorized source code to Sinovel.

14. Emails and Skype conversations were found within Karabasevic's computers obtained from his Beijing and Klagenfurt, Austria apartments--the searches of which are described below. According to the private investigator's report, Karabasevic created and used a Google email account of dejan.karabasevic@gmail.com to communicate with Sinovel employees regarding his employment with Sinovel, and to provide and repair the stolen/modified AMSC code discussed above. Karabasevic communicated via email with at least two Sinovel employees, Su Liying and Zhao Haichun. Su Liying used a number of email addresses, including Google email account "sinoveldejan@gmail.com" to communicate with Karabasevic. Zhao Haichun used the following two Yahoo! email accounts to communicate with Karabasevic: "sinovel_zhc@yahoo.com" and "sinovel_zho@yahoo.com."

15. Karabasevic also used a Skype chat program to converse with representatives of Sinovel regarding the transfer of the source code version 5650414_R1 and other AMSC proprietary information. Over Skype, Karabasevic discussed issues related to the stolen/modified AMSC code with Su Liying and Zhao Haichun. In addition, documents found in Karabasevic's Beijing apartment, showed that between approximately September 2010 and February 2011, Karabasevic negotiated an employment contract with Sinovel. Karabasevic and Sinovel agreed to a six-year

contract beginning in May 2011, with Karabasevic's total compensation exceeding 11 million renminbi, which equates to approximately $1.7 million U.S. dollars. This employment contract was sent to Karabasevic's Google email account (dejan.karabasevic@gmail.com) from Zhao Haichun using his Yahoo! email account (sinovel_zhc@yahoo.com.cn). Karabasevic also used his Google email account to provide the modified and compiled source code version 5650414_R1 to Sinovel so that it would function in Sinovel turbines without license or authorization from AMSC.

16.     The private investigative firm hired by AMSC discovered other email communications between Karabasevic and Su Liying and Zhao Haichun related to the stolen/modified AMSC code. Su Liying used her Google account to notify Karabasevic of error messages she received after testing the stolen/modified AMSC code on wind turbines in China. Using his Google email account, Karabasevic sent modified AMSC codes to Su Liying and other Sinovel employees after he discovered and repaired errors he found in the stolen/modified AMSC code.

17.     Karabasevic was confronted by AMSC Windtec personnel on June 30, 2011. Karabasevic gave a statement on that day and then provided a signed statement on July 28, 2011. I have reviewed a translated copy of Karabasevic's statement. In his signed statement, Karabasevic admitted to downloading source code from the AMSC computer network. Karabasevic admitted that he downloaded the entire source code folder through the AMSC network to his office at AMSC Windtec, Klagenfurt, Austria, to his AMSC Windtec laptop, then to an external drive, and then to another laptop. As

noted above, the development folder was stored exclusively on a computer at the AMSC office in Middleton, Wisconsin. Karabasevic further admitted to downloading other proprietary AMSC information from computers at AMSC Windtec, Klagenfurt, Austria. Karabasevic admitted that he intentionally provided AMSC software to Sinovel employees without authorization or knowledge of AMSC, and then traveled to China where he adapted AMSC software for use in Sinovel's wind turbines. Karabasevic admitted that he knew what he was doing was wrong. Karabasevic further admitted that he had negotiated an employment contract with Sinovel.

18. In July 2011, Karabasevic gave written permission, in the presence of a representative of Dorda Brugger Jordis (DBJ), an Austrian law firm, to search the Beijing apartment that Sinovel had arranged for him. On July 9, 2011, private detectives searched Karabasevic's Beijing apartment, finding two notebook computers, an external hard drive, and documents. Included within the documents were employment contracts negotiated between Karabasevic and Sinovel. The next day, July 10, 2011, at the Vienna, Austria airport, an AMSC China employee turned over the evidence obtained from Karabasevic's Beijing apartment to a representative of the private investigative firm. Subsequently, the Beijing evidence was turned over to Austrian law enforcement authorities through DBJ, the Austrian law firm. Around the same period, Austrian law enforcement officers secured computers and other electronic storage media from Karabasevic's Klagenfurt, Austria apartment.

19. Forensic copies of the computers and electronic storage media obtained from Karabasevic's Beijing and Klagenfurt apartments were initially analyzed by forensic analysts working with the private investigative firm and later by an FBI forensic examiner. The forensic examination of the computers and electronic storage media found in Karabasevic's Beijing and Klagenfurt apartments showed that he had stored, possessed, and manipulated AMSC proprietary data--downloaded from AMSC Windtec in Klagenfurt, Austria, and AMSC in Middleton, Wisconsin--on the computers and electronic storage media. In particular, the entire folder containing source code version 5650414_R1 and the "checksum generator" program downloaded on March 7, 2011, from the AMSC Middleton, Wisconsin, server was found on a laptop computer in Karabasevic's Beijing apartment. The analysis further showed, consistent with Karabasevic's confession described herein, that the information downloaded from AMSC Middleton, Wisconsin, had been adapted for use with equipment associated with Sinovel's wind turbines.

20. In his signed statement, Karabasevic admitted that he used a number of email accounts to communicate with Sinovel. The following is a list of those email accounts and the stated purpose of each:

    (a)    dejan.karabasevic@gmail.com: created to contact friends and for discussions with Sinovel;

    (b)    sinoveldejan@gmail.com: created by Su Liying to converse with Karabasevic.

After Karabasevic was confronted by AMSC personnel on June 30, 2011, he instructed his ex-wife to delete all emails from his Google email account. She was stopped and relevant emails were found both on Karabasevic's computers and stored at Google.

Charlestown Turbine

21. Sumul Shah, Chief Operating Officer of Solaya Energy, LLC., and President of Lumus Construction (Lumus), Wilmington, Massachusetts, learned of the potential theft of intellectual property and invited AMSC to inspect a Sinovel turbine that Lumus was installing at 172 Alford Street, Charlestown, Massachusetts. I spoke with Shah and explained that Lumus was installing the turbine for the Massachusetts Water Resources Authority and that Lumus had a contract to maintain the turbine after installation.

22. On March 22, 2012, the Honorable Magistrate Judge Jennifer C. Boal, District of Massachusetts, signed a warrant to search the Charlestown turbine for, among other things, digital evidence of the stolen/modified AMSC code. (12-mj-7044-JCB). On March 28, 2012, the FBI executed the search warrant and seized digital evidence from the Charlestown turbine.

Scituate, Massachusetts Turbine

23. On May 10, 2012, Sumul Shah gave consent to search a different turbine manufactured by Sinovel which was located in Scituate, Massachusetts, along with an adjacent storage container. FBI agents searched the Scituate turbine on May 15, 2012,

13

and copied and seized digital evidence from the Scituate turbine and seized digital evidence from a spare PM3000 component located in the adjacent storage container.

Fairhaven, Massachusetts Turbines

24. On December 20, 2012, pursuant to a grand jury subpoena, FBI agents searched two additional turbines manufactured by Sinovel which were located in Fairhaven, Massachusetts. Agents copied and seized digital evidence from the Fairhaven turbines.

Forensic Analysis

25. In consultation with AMSC engineers, FBI Special Agent Matt Petersen, reviewed three categories of electronic evidence: (a) Karabasevic's computers and electronic storage media seized from his Beijing and Klagenfurt apartments; (b) the software code that Karabasevic emailed to his contacts at Sinovel; and (c) the information downloaded from the Charlestown, Scituate, and Fairhaven turbines. In summary, Agent Petersen's analysis shows:

(a) Karabasevic downloaded the source code version 5650414_R1 and the "checksum generator" from Middleton on or about March 7, 2011;

(b) Karabasevic transferred the source code version 5650414_R1 and the "checksum generator" program to other devices including a Lenovo laptop found in Karabasevic's Beijing apartment;

(c) A modified version of source code version 5650414_R1 exists on the Lenovo laptop. There were three minimal modifications to the source

code. The changes, while minimal, allowed Sinovel to use AMSC's software without limitation.

(d)   A version of the modified and compiled software compiled from the source code version 5650414_R1 exists on the Lenovo laptop. The "checksum generator" was applied to the modified software in order for it to function. Karabasevic sent portions of the modified and compiled version of this software to Su Liying on at least May 28, 2011 and June 11, 2011.

(e)   The modified and compiled versions of the software Karabasevic sent to Su Liying were found on the Charlestown, Scituate, and Fairhaven, Massachusetts, wind turbines.

26.   Senior AMSC Software Manager William Vareka conducted extensive analysis comparing the authorized AMSC software generated from source code version 5650414_R1 with the unauthorized versions of the software resulting from Karabasevic's unauthorized downloading, modifying, and compiling source code version 5650414_R1 that were found within: the June 11, 2011 email Karabasevic sent to Su Liying and the Sinovel wind turbines located in Charlestown, Scituate, and Fairhaven Massachusetts. Based on his analysis, Vareka determined that the software attached to the June 11, 2011 email Karabasevic sent to Su Liying and found in the Sinovel wind turbines located in Charlestown, Scituate, and Fairhaven Massachusetts, were all generated from source code version 5650414_R1.

Electronic Communications Involving Karabasevic, Su Liying, and Zhao Haichun

27. As described above, written Skype "chat" conversations were found within Karabasevic's computers obtained from his Beijing and Klagenfurt, Austria. Skype "chat" communications between Karabasevic and Zhao Haichun indicate that Sinovel had begun to copy the unauthorized software compiled from source code version 5650414_R1 as early as June 2, 2011.

28. Karabasevic exchanged e-mails with Zhao Haichun's Yahoo! e-mail account and Su Liying's Google e-mail account. Karabasevic also used his Google e-mail account to provide modified software compiled from the source code version 5650414_R1 to Su Liying on at least one occasion on June 11, 2011.

29. Su Liying used her Google account to notify Karabasevic of error messages Su Liying received after testing the stolen and modified AMSC code on wind turbines in China. Using his Google e-mail account, Karabasevic sent modified AMSC code to Su Liying and sent directions to other employees of Sinovel as he helped them to implement the software compiled from source code version 5650414_R1 and other intellectual property that Karabasevic had stolen from AMSC.

30. On April 20, 2012, this Court issued search warrants to be executed on the Yahoo! and Google email accounts used by Su Liying and Zhao Haichun. That search resulted in the recovery of thousands of emails in Chinese. Translations of these emails indicate that many Sinovel employees--including Su Liying and Zhao Haichun--used Google and Yahoo! email services to conduct business on behalf of Sinovel. The earliest

emails recovered are contemporaneous with Karabasevic's work for Sinovel in China during June 2011. The latest emails were sent in April 2012.

31. On June 1, 2011, Zhao Haichun, using his Yahoo! email account, sent a work appraisal form for Sinovel district managers. About a week later, on June 9, 2011, Zhao Haichun sent an email, using his Yahoo! email account, to two Sinovel managers that their staff in 2009 and 2010 may receive a one level increase from their original "bases." It is my belief that Zhao Haichun is notifying his managers that their employees may receive a one-level pay increase. On July 8, 2011, Zhao Haichun sent an email, using his Yahoo! email account, providing an update to other Sinovel employees regarding Sinovel's past and future research and development efforts.

32. On August 26, 2011, Zhao Haichun communicated with Karabasevic's girlfriend using his Yahoo! account to her Hotmail account (huyen.nhu@hotmail.com). According to the private investigative report, Karabasevic's girlfriend is a Vietnamese national and a flight attendant. The April 20, 2012, search warrant revealed that on August 26, 2011, Karabasevic's girlfriend, using her Hotmail account, emailed Zhao Haichun her contact information which included her name, address in Vietnam, her phone number, and her bank account information. She also stated that Zhao Haichun could send money to her via Western Union. The same day, Zhao Haichun responded to the email and thanked her for the email and the reminder.

33. On numerous occasions, Zhao Haichun was emailed his annual goals for the upcoming year to his Yahoo! email account. Zhao Haichun was also emailed his

17

annual performance review to his Yahoo! email account on a number of occasions. Employees of Sinovel sent emails to Zhao Haichun's Yahoo! email account related to Sinovel policies/protocols. For instance, in an email dated December 29, 2011, a Sinovel employee disseminated a new Sinovel policy to his colleagues--including Zhao Haichun--regarding the export of software. The new policy indicates that all software must be removed from exported hardware so that during storage, transportation, and loading the hardware components are devoid of Sinovel software. The email further indicated that the software would be loaded by field commission personnel during turbine field commissioning. Along with this directive, the individual provided a detailed, 16-page manual providing the manner and method to remove Sinovel software prior to export. The investigation indicates that the stolen and modified software was loaded into the Massachusetts turbines after the turbines were installed and prior to or during the commissioning phase. This policy would thwart a customs inspection for stolen software when the turbines arrive at a port of entry.

34.     Emails obtained in connection with the April 20, 2012, Yahoo! search warrant also indicate that Zhao Haichun was Sinovel's project manager for installing turbines manufactured by Sinovel in Charlestown, Scituate, and Fairhaven Massachusetts. The preliminary translations indicate that many emails concern implementing LVRT-complaint software on turbines in China and on the exported turbines. For example, agents discovered a large number of emails with a spreadsheet labeled "Field Commission and Testing Report." The spreadsheet provides a numeric

analysis of the various stages of the retrofitting of wind turbines in China. Given the type of turbine control system in many turbines, we believe that many of those turbines contain the unauthorized software compiled from source code version 5650414_R1.

35.   Additional emails obtained pursuant to the April 20, 2012, Yahoo! search warrant demonstrate that Zhao Haichun continues to use his Yahoo! account to conduct business for Sinovel. For instance, in a series of emails between February 2012 to April 2012, Sinovel personnel sent emails to others in Sinovel and to Zhao Haichun's Yahoo! account discussing the software we believe to be derived from the stolen and modified source code and providing a daily status report for all four wind turbines in the United States by city name (i.e., Charlestown, Scituate, and Fairhaven, Massachusetts). The series of emails also notified Zhao Haichun and others in Sinovel about the physical location of the software we believe to be derived from stolen and modified source code, and when that software would be uploaded on Massachusetts turbines. On September 4, 2011, Zhao Haichun, using his Yahoo! account, sent an email to another Sinovel employee with an attachment believed to be software believed to be derived from stolen and modified source code and Zhao Haichun asked the Sinovel employee to distribute it. On September 19, 2011, Zhao Haichun sent Sinovel's Chief Executive Officer an email notifying him that AMSC was suing Sinovel. The next day, Zhao Haichun sent a website link to a news article regarding the lawsuit filed by AMSC to Su Liying's Google account. On October 22, 2011, a daily report was sent to Zhao Haichun that mentions remote software updates. Based on my knowledge of this case, it is my

belief that the software update referred to in this email is the stolen AMSC software.

Sworn to under the pains and penalties of perjury.

_____
JOSHUA BEN MAYERS
Federal Bureau of Investigations

Sworn to and subscribed before me this 30th day of May, 2013.

_____
HONORABLE STEPHEN L. CROCKER
UNITED STATES MAGISTRATE JUDGE