IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

SINOVEL WIND GROUP CO., LTD., dba SINOVEL WIND GROUP (USA) CO., LTD., SU LIYING, ZHAO HAICHUN, and DEJAN KARABASEVIC aka DAN KARABASEVIC,

Defendants.

INDICTMENT

Case No. 13 CR 84 BBC

18 U.S.C. § 1343
17 U.S.C. § 506(a)(1)(A)
18 U.S.C. § 2319
18 U.S.C. § 1832
18 U.S.C. § 371

THE GRAND JURY CHARGES:

COUNT 1

At times material to this Count:

1. AMSC (formerly American Superconductor, Inc.), was a United States-based company with its principal office in Devens, Massachusetts, and other offices in Middleton, Wisconsin; New Berlin, Wisconsin; and Klagenfurt, Austria. AMSC's core business was the development, support, and production of equipment and software for wind turbines and electrical grids.

2. Among the products that AMSC developed and sold was software and equipment to regulate the flow of electricity from wind turbines to electrical grids. Two AMSC products that are part of the AMSC wind turbine electrical control system and that use AMSC proprietary software are the Power Module 3000 (PM3000) and the Programmable Logic Controller (PLC). These products work together using, among other programs, AMSC's Low Voltage Ride Through (LVRT) software. The equipment and software that comprise the LVRT system are designed to keep the wind turbine

operational when there is a temporary sag or dip in flow of electricity in the electrical grid. AMSC considered the source code, software, equipment designs, technical drawings, and architecture for the LVRT system to be trade secrets and proprietary information. AMSC took reasonable measures to keep its trade secrets and proprietary information secret. In addition, AMSC's trade secrets derived independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public.

3. The software that runs the PM3000 and the PLC were original works of authorship, belonging to AMSC, that were fixed in a tangible medium of expression within the AMSC computer system. The software that runs the PM3000 was developed in Wisconsin and was stored on a computer in AMSC's Middleton, Wisconsin office, in the Western District of Wisconsin. The PM3000 software was derived from AMSC's PM3000 computer source code and was stored in a development folder in a computer in AMSC's Middleton, Wisconsin office. AMSC incorporated the term "copyright" into the PM3000 source code and took deliberate steps to protect the source code and its other intellectual property from unauthorized use. In the same Middleton, Wisconsin computer server, AMSC stored a proprietary "checksum generator" program developed to work in conjunction with the PM3000 source code.

4. AMSC produced the PM3000, the PLC, the source code, and the software that ran these devices for interstate and foreign commerce.

5. Among other measures to protect its confidential proprietary information, AMSC restricted physical access to its work spaces to authorized personnel and

required its employees, including DEJAN KARABASEVIC, to create and use a unique password to access the AMSC computer system. Additionally, AMSC required its employees to certify their understanding of AMSC's Code of Business Conduct and Ethics. That code required AMSC employees: to act in the best interests of AMSC; to avoid conflicts of interest; to not disclose confidential business information; to protect AMSC assets; and to not use AMSC assets for personal gain. In addition, AMSC's Information Technology Policy forbade use of the AMSC computer network to violate AMSC standards of ethics or to transmit proprietary information in any manner inconsistent with AMSC policies and directives.

6. SINOVEL WIND GROUP CO., LTD., dba SINOVEL WIND GROUP (USA) CO., LTD., (SINOVEL), a manufacturer and exporter of wind turbines based in the People's Republic of China (China), with an office in Houston, Texas, purchased software and equipment from AMSC for the wind turbines that SINOVEL manufactured, sold, and serviced. SINOVEL sold and serviced wind turbines in China, the United States, and around the world. SINOVEL legitimately purchased software and equipment from AMSC until March 2011. In March 2011, Sinovel owed AMSC more than $100,000,000 United States Dollars (USD) for software, products, and services previously delivered, and had contracted to purchase more than $700,000,000 USD in software, products, and services from AMSC in the future.

7. SU LIYING, a Chinese national residing in China and a member of this conspiracy, worked as a Deputy Director in SINOVEL's Research and Development Department.

8. ZHAO HAICHUN, a Chinese national residing in China and a member of this conspiracy, worked as a Technology Manager for SINOVEL.

9. DEJAN KARABASEVIC, aka DAN KARABASEVIC, (KARABASEVIC), a Serbian national and a member of this conspiracy, was employed by AMSC Windtec GmbH (AMSC Windtec), in Klagenfurt, Austria. AMSC Windtec was a wholly-owned subsidiary of AMSC. KARABASEVIC headed the Automation Engineering Department at AMSC Windtec, in Klagenfurt, Austria. On March 10, 2011, KARABASEVIC submitted his resignation, which was accepted on March 11, 2011. KARABASEVIC retained access to the AMSC Windtec computer system into May 2011 and his final day with AMSC Windtec was June 30, 2011.

## Conspiracy

10. From on or about January 1, 2011, to on or about December 20, 2012, in the Western District of Wisconsin and elsewhere, the defendants,

SINOVEL, SU LIYING, ZHAO HAICHUN, and
DEJAN KARABASEVIC,

knowingly and unlawfully conspired with each other and with others, known and unknown to the grand jury, to commit and to cause to be committed violations against the United States, namely, trade secret theft, in violation of Title 18, United States Code, Section 1832(a)(2), and criminal copyright infringement, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319.

11. It was the object and purpose of the conspiracy to obtain AMSC's copyrighted information and trade secrets in order to produce LVRT compliant wind turbines, and to retrofit existing wind turbines with LVRT technology, without having

to pay AMSC for previously-delivered AMSC software, products, and service or for AMSC's trade secrets and intellectual property, thereby cheating AMSC out of more than $800,000,000 USD.

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

12. It was part of the conspiracy that SINOVEL, through SU LIYING and ZHAO HAICHUN, recruited KARABASEVIC to leave AMSC Windtec and join SINOVEL.

13. It was further part of the conspiracy that, between March 1, 2011, and June 30, 2011, KARABASEVIC secretly copied intellectual property from the AMSC computer system, including the PM3000 source code.

14. It was further part of this conspiracy that on or about June 1, 2011, SINOVEL provided KARABASEVIC with a one-year employment contract that made it appear that KARABASEVIC would work for a Chinese wind turbine blade manufacturer from July 1, 2011, to June 30, 2012, in order to hide the fact that KARABASEVIC planned to work for SINOVEL during the same period.

15. It was further part of this conspiracy that between approximately May 1, 2011, and June 30, 2011, SINOVEL provided KARABASEVIC with a laptop computer to be used to adapt AMSC's intellectual property for SINOVEL's unrestricted use.

16. It was further part of this conspiracy that between approximately May 1, 2011, and June 30, 2011, KARABASEVIC provided SINOVEL with AMSC proprietary software, technical information, and trade secret information, relating to the PM3000

and the PLC, including a modified version of the software compiled from the PM3000 source code.

17. It was further part of this conspiracy that, during June 2011, SINOVEL provided KARABASEVIC with an apartment in Beijing, China, and equipment for his use to deploy AMSC's intellectual property for unlimited and unlicensed use by SINOVEL.

18. It was further part of this conspiracy that between on or about March 7, 2011, and on or about June 24, 2011, KARABASEVIC adapted the AMSC intellectual property that he had unlawfully downloaded for unlicensed use within SINOVEL's wind turbines.

19. It was further part of this conspiracy that on or about June 11, 2011, KARABASEVIC emailed SU LIYING a modified version of the software compiled from AMSC's PM3000 source code.

20. It was further part of this conspiracy that between June 11, 2011, and December 11, 2011, SU LIYING and ZHAO HAICHUN copied and caused to be copied the software, modified by KARABASEVIC, that was compiled from AMSC's PM3000 source code, and other intellectual property belonging to AMSC, into more than ten Sinovel wind turbines.

21. It was further part of this conspiracy that on or about October 25, 2011, SINOVEL, with ZHAO HAICHUN serving in a managerial role, commissioned a wind turbine in Charlestown, Massachusetts. In connection with the commissioning process,

SINOVEL copied into the turbine, software compiled from the stolen and modified AMSC PM3000 source code.

22. It was further part of this conspiracy that on or about April 20, 2012, SINOVEL, with ZHAO HAICHUN serving in a managerial role, commissioned a wind turbine in Scituate, Massachusetts. In connection with the commissioning process, SINOVEL copied into the turbine, software compiled from the stolen and modified AMSC PM3000 source code.

23. It was further part of this conspiracy that on or about May 22, 2012, SINOVEL, with ZHAO HAICHUN serving in a managerial role, commissioned two wind turbines in Fairhaven, Massachusetts. In connection with the commissioning process, SINOVEL copied into the turbines, software compiled from the stolen and modified AMSC PM3000 source code.

24. In furtherance of this conspiracy, and to accomplish its objectives, SINOVEL, SU LIYING, ZHAO HAICHUN, and DEJAN KARABESEVIC performed and caused to be performed the following acts, among others, within the Western District of Wisconsin and elsewhere:

(a) On or about February 26, 2011, ZHAO HAICHUN emailed KARABASEVIC a contract offering a salary of 11 million renminbi (approximately $1.7 million USD) for KARABASEVIC to work for SINOVEL from May 2011 through June 2017, essentially doubling KARABASEVIC's annual pay.

(b) On or about March 7, 2011, KARABASEVIC used the internet to

access an AMSC computer in Middleton, Wisconsin to secretly copy the development folder for the PM3000, which included the PM3000 source code.

(c) On or about March 21, 2011, KARABASEVIC noted in a written Skype "chat" to ZHAO HAICHUN that SINOVEL had the "full code" for AMSC's PLC device.

(d) On or about May 9, 2011, KARABASEVIC, in a written Skype "chat," confirmed to SU LIYING that he had provided to SINOVEL, through her, "the latest PM3000" software.

(e) On or about May 10, 2011, SU LIYING, in a written Skype "chat," indicated to KARABASEVIC that she was under pressure from her SINOVEL supervisors to successfully adapt AMSC's LVRT technology for SINOVEL. KARABASEVIC responded, "if you succeed, Sinovel can separate from AMSC." SU LIYING replied "and I need your strong help. haha."

(f) On about May 10, 2011, SU LIYING emailed KARABASEVIC information concerning errors occurring in a turbine test she ran while attempting to adapt AMSC's LVRT software for SINOVEL turbines.

(g) On or about May 21, 2011, KARABASEVIC emailed "the latest software" to SU LIYING with directions for its use. The software KARABASEVIC sent was trade secret information and intellectual property belonging to AMSC.

(h) On or about May 26, 2011, KARABASEVIC traveled to China to adapt AMSC's proprietary and trade secret information for use in SINOVEL wind turbines.

(i) On or about May 28, 2011, KARABASEVIC emailed SU LIYING a modified version of software compiled from AMSC's PM3000 source code.

(j) On or about May 2, 2011, and on or about June 1, 2011, SINOVEL provided KARABASEVIC with employment contracts that made it appear that KARABASEVIC would work for a different business, a Chinese wind turbine blade manufacturer, from May 3, 2011, to June 30, 2012.

(k) On or about June 2, 2011, ZHAO HAICHUN, in a written Skype "chat," reported to KARABASEVIC that he was at a wind turbine farm in Gansu, China, and had conducted a "voltage sag" test on twenty-one SINOVEL wind turbines to which the LVRT update had been copied. ZHAO HAICHUN noted that the test was successful and wrote to KARABASEVIC that it was "all because of you."

(l) On or about June 11, 2011, KARABASEVIC emailed SU LIYING a modified version of the software compiled from AMSC's PM3000 source code.

(m) On or about October 25, 2011, SINOVEL and ZHAO HAICHUN copied and caused to be copied the software compiled from the stolen and modified AMSC PM3000 source code into a wind turbine in Charlestown, Massachusetts.

(n) On or about April 20, 2012, SINOVEL and ZHAO HAICHUN copied and caused to be copied the software compiled from the stolen and modified AMSC PM3000 source code into a wind turbine in Scituate, Massachusetts.

(o) On or about May 22, 2012, SINOVEL and ZHAO HAICHUN copied and caused to be copied the software compiled from the stolen and modified AMSC PM3000 source code into two wind turbines in Fairhaven, Massachusetts.

(All in violation of Title 18, United States Code, Section 371).

COUNT 2

1. Paragraphs 1 through 24 of Count One are incorporated here.

2. On or about March 7, 2011, in the Western District of Wisconsin and elsewhere, the defendants,

SINOVEL, SU LIYING, ZHAO HAICHUN, and
DEJAN KARABASEVIC,

with the intent to convert a trade secret, specifically, the PM3000 source code, that is related to a product that is used and intended for use in interstate and foreign commerce, to the economic benefit of anyone other than the trade secret's owner, namely, SINOVEL, and knowing and intending that the offense would injure AMSC, the trade secret owner, knowingly and without authorization copied, duplicated, downloaded, and conveyed such information.

(In violation of Title 18, United States Code, Sections 1832(a)(2) and 2).

COUNT 3

1. Paragraphs 1 through 24 of Count One are incorporated here.

2. On or about March 7, 2011, in the Western District of Wisconsin and elsewhere, the defendants,

SINOVEL, SU LIYING, ZHAO HAICHUN, and
DEJAN KARABASEVIC,

having knowingly devised and intending to devise a scheme to defraud AMSC of its intellectual property, namely, the source code for the PM3000 and proprietary and other confidential business information relating to the PM3000, by means of materially false

statements and by concealment of material facts for the purpose of executing and attempting to execute the scheme to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, writings, signals, and pictures by downloading the PM3000 source code and other proprietary and confidential business information relating to the PM3000 from an AMSC computer in Middleton, Wisconsin to a computer in Austria.

(In violation of Title 18, United States Code, Sections 1343 and 2).

A TRUE BILL

[signature]

PRESIDING JUROR

[signature]

JOHN W. VAUDREUIL
United States Attorney

Indictment returned: 6/27/2013