# Vinson&Elkins

Amy Lamoureux Riella  ariella@velaw.com
**Tel** +1 (202) 639-6760  **Fax** +1 (202) 879-8890

July 29, 2013

**VIA ELECTRONIC FILING**

Magistrate Judge Stephen L. Crocker
United States District Court for the
    Western District of Wisconsin
120 N. Henry Street, Room 320
Madison, Wisconsin  53703

Re:   *United States of America v. Sinovel Wind Group Co., Ltd. et al.*
      Case No. 3:13-cr-00084-BBC (W.D. Wisc.)

Dear Judge Crocker,

    I write on behalf of Sinovel Wind Group Co., Ltd. ("Sinovel") in response the Government's letter of July 25, 2013 (dkt. no. 42) ("Letter") regarding AMSC's imminent "inspection" and "upgrade" of four wind turbines and associated spare parts in Massachusetts.

    Sinovel submits this letter pursuant to the Court's orders granting its counsel leave to enter a special appearance. Dkt. nos. 14-17, 19, & 40. Neither submitting this letter at the Court's invitation, dkt. no. 43, nor participating in the telephonic conference set by the Court for this coming Wednesday, July 31st, shall be deemed a general appearance subjecting Sinovel to the jurisdiction of this Court or otherwise waiving any jurisdictional defense.

    Sinovel respectfully objects to AMSC's alteration or destruction of evidence. The Government has alleged that Sinovel installed "software compiled from the stolen and modified AMSC PM3000 source code" into wind turbines in Charlestown, Scituate, and Fairhaven, Massachusetts. Indictment, dkt. no. 25, at ¶¶ 21-23. Now, the Government submits that AMSC is imminently to have direct access to those turbines for the express purpose of manipulating the software on them (*i.e.*, "to inspect and/or upgrade the software in some or all of the four Massachusetts wind turbines at issue in this case"). Letter, at 2. Presumably the Government has already recovered what evidence it desires from the turbines, but Sinovel has had no such opportunity. By "upgrading" the software on the turbines, AMSC will forever deprive Sinovel of the opportunity to assess for itself what software currently exists on the turbines and thereby challenge the Government's allegations.

**Vinson & Elkins LLP  Attorneys at Law**                                      2200 Pennsylvania Ave. NW, Suite 500 West
Abu Dhabi  Austin  Beijing  Dallas  Dubai  Hong Kong  Houston  London  Moscow  Washington, DC  20037
New York  Palo Alto  Riyadh  San Francisco  Shanghai  Tokyo  Washington        **Tel** +1 (202) 639-6500  **Fax** +1 (202) 639-6604  www.velaw.com

V&E

While Sinovel would object to any such manipulation of the turbines, the imminent "inspection" and "upgrade" by AMSC is particularly troubling. AMSC is neither a party to this case nor an expert in forensic preservation of electronic evidence, and AMSC is far from neutral. The Government alleges that Sinovel stole trade secrets from AMSC, and AMSC issued a press release proclaiming Sinovel's guilt within hours of the Government's indictment. Press Release, AMSC, China's Sinovel Indicted in the United States for Stealing AMSC Trade Secrets (June 27, 2013) (available at http://ir.amsc.com/releasedetail.cfm?ReleaseID=774372).

Despite AMSC's clear bias, the Government relied on AMSC to assess technical evidence against Sinovel. *See, e.g., id.* ("'We have worked with law enforcement to verify that these Sinovel-manufactured wind turbines contain AMSC's stolen intellectual property,' said Daniel P. McGahn, AMSC's President and CEO."); Affidavit of Joshua Ben Myers, dkt. no. 7-1, ¶¶ 25, 26 (May 30, 2013) ("Based on his analysis, [Senior AMSC Software Manager] Vareka determined that the software attached to the June 11, 2011 email Karabasevic sent to Su Liying and found in the Sinovel wind turbines located in Charlestown, Scituate, and Fairhaven Massachusetts, were all generated from source code version 5650414_Rl.").

The Government even insisted that an AMSC engineer be present when Sinovel's outside counsel and technical experts reviewed certain computer evidence during the pre-indictment phase of this case. (Sinovel declined to review the evidence with AMSC literally watching over its shoulder and, to this day, has not had an opportunity to evaluate that evidence.) Moreover, Sinovel and AMSC are presently engaged in protracted civil litigation and arbitrations in China concerning substantially the same contract issues underlying this case.

Sinovel objects to the alarming possibility that potentially significant evidence (that may be disputed in this case) is about to be accessed and altered by an interested party with motives of its own. At a minimum, however, AMSC's "inspection" or "upgrade" should not occur until the government represents (or this Court determines) that Sinovel will not waive any jurisdictional objections by inspecting the turbines and preserving any evidence that may exist, and Sinovel is allowed the following opportunities:

(1)   to inspect the four Massachusetts wind turbines at issue and make an exact copy (*i.e.*, a "forensic image") of the data stored on the turbines, and any associated spare parts, before they are "inspected" or "upgraded" by AMSC;

(2)   to review correspondence between AMSC and the turbine operators related to the proposed inspection and upgrade to determine precisely what the operators have requested and what AMSC intends to do, before the "inspection" or "upgrade" by AMSC;

(3)   to observe and record (*e.g.*, by videography) AMSC's inspection and manipulation of the turbines and spare parts; and

**V&E**

  (4)  to receive an exact copy of any data downloaded from or uploaded to the turbines and spare parts by AMSC.

  Although Sinovel objects to any tampering with material evidence in the case, the above approach would attempt to balance the practical need of the operators to maintain their turbines, on the one hand, and Sinovel's right to inspect and preserve potentially exculpatory evidence while ensuring some integrity of process in gathering evidence, on the other. Sinovel is prepared to work expeditiously, and in cooperation with the Government and turbine operators, to conduct the inspection efficiently and coordinate observation of any subsequent work by AMSC.

  Sinovel thanks Your Honor for his consideration and looks forward to discussing this matter at the telephonic conference set for this coming Wednesday, July 31st, at 3:00 PM CDT.

            Respectfully submitted,

            */s/ Amy L. Riella*

            Amy L. Riella, Esq.

cc:  Counsel of Record (via CM/ECF)