UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>vs.<br><br>**SINOVEL WIND GROUP CO., LTD.**, *et al.*,<br><br>**Defendants.** | Case No. 13-cr-84-jdp |

## SPECIALLY-APPEARING DEFENDANT SINOVEL WIND GROUP CO., LTD.'S MOTION TO DISMISS COUNT 2 OF THE INDICTMENT

Specially-appearing defendant Sinovel Wind Group Co., Ltd., ("Sinovel") respectfully files its Motion to Dismiss Count 2 of the Indictment. The grand jury failed to consider the proper jurisdictional element in Count 2, which thereby deprives the Court of jurisdiction to hear the case. A failure to dismiss Count 2 will also result in a violation of the Fifth Amendment's Grand Jury Clause. The government has effectively conceded that Count 2 is defective, but its attempt to cure through its jury instructions is constitutionally insufficient. In short, dismissal of Count 2 is the only appropriate remedy.

### I.     RELEVANT BACKGROUND

The grand jury in this case returned a true bill as to Count 2, the substantive trade-secret theft allegation. *See* Dkt. 25 at 10. It alleges a violation under the Economic Espionage Act ("EEA"), 18 U.S.C. § 1832(a)(2):

> On or about March 7, 2011, in the Western District of Wisconsin, and elsewhere, the defendants,
>
> SINOVEL, SU LIYING, ZHAO HAICHUN, and
> DEJAN KARABASEVIC,

> with the intent to convert a trade secret, specifically, the PM3000 source code, that is related to *a product that is used and intended for use* in interstate and foreign commerce, to the economic benefit of anyone other than the trade secret's owner, namely, SINOVEL, and knowing and intending that the offense would injure AMSC, the trade secret owner, knowingly and without authorization copied, duplicated, downloaded, and conveyed such information.

Dkt. 25 at 10 (emphasis added).

The italicized language, above, reflects an amendment to the EEA's jurisdictional provision that went in effect on December 28, 2012. *See* 18 U.S.C. § 1832(a) (amended Pub. L. 112–236, § 2, Dec. 28, 2012, 126 Stat. 1627). The *original* version of the law's jurisdictional provision was in effect from October 1996 until December 28, 2012, and it was materially stricter:

> Whoever, with intent to convert a trade secret, that is related to *or included in a product that is produced for or placed* in interstate or foreign commerce . . .

18 U.S.C. § 1832(a) (Pub. L. 104-294, tit. I, § 101(a), Oct. 11, 1996, 110 Stat. 3489) (emphasis added).

Congress' relaxation of the statute was purposeful in order to address the Second Circuit's conviction reversal in *United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012). *See* 158 Cong. Rec. H00000-52, at 3-4 (Dec. 18, 2012) (stating that "S. 3642 responds to a recent Federal court decision that exposed a gap in Federal law" and "will close the gap exposed in that case exposed in that case by clarifying that the statute applies to both products and services which are used in or intended for use in interstate or foreign commerce").

2

## II.     LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b), in relevant part, a defendant may move to dismiss an indictment on the basis that the court lacks jurisdiction. *See* Fed. R. Crim. P. 12(b)(2). Such a motion "may be made at any time while the case is pending." *Id.*; *see also United States v. Pleasant*, 125 F. Supp. 2d 173, 183 (E.D. Va. 2000) ("The inadequacy of the indictment may be raised at any time during the proceedings[.]").

## III.     ARGUMENT

Count 2 in this case must be dismissed. It fails to plead the correct jurisdictional element of the EEA applicable to the alleged conduct, which thereby deprives this Court of subject-matter jurisdiction to hear the case. The government has effectively conceded this defect as reflected in its proposed Count 2 jury instruction. Moreover, dismissal is also required in order to avoid a violation of the Fifth Amendment's Grand Jury Clause—a violation that the government's recent proposed corrective jury instruction (Dkt. 323 at 17) cannot remedy.

### A.     **Count 2 Fails to Correctly Allege Subject-Matter Jurisdiction**

Count 2 of the indictment alleges an incorrect element of the EEA. Although the conduct in Count 2 is alleged to have occurred on or about March 7, 2011, the amended law under which the grand jury charged Sinovel did not go into effect until December 28, 2012—nearly two years later. By alleging the wrong jurisdictional element in Count 2, the Court does not properly have the authority to hear this count. Without jurisdiction, the count must be dismissed.

Subject matter jurisdiction is crucial and determines the Court's ability to hear a case. *See, e.g.*, *Kelly v. United States,* 29 F.3d 1107, 1112-13 (7th Cir. 1994), *overruled on*

*other grounds by United States v. Ceballos*, 302 F.3d 679 (7th Cir. 2002) ("Federal courts can exercise jurisdiction only where it is given to them by Congress… for centuries it has been recognized that federal courts have an obligation – regardless of the arguments advanced to them by the parties – to assure themselves of their own jurisdiction."); *see also Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign."). Due to its fundamental and threshold importance, the indictment must articulate—correctly—the basis for jurisdiction. *See, e.g.*, *United States v. Thomas*, 610 F.2d 1166, 1172 (3rd Cir. 1979) (*per curiam*).

In this case, the EEA provision in question relates to the statute's federal subject-matter jurisdiction. *See, e.g.*, *United States v. Aleynikov*, 737 F. Supp. 2d 173, 181 (S.D.N.Y. 2010), *rev'd*, 676 F.3d 71 (2d Cir. 2012) ("Thus, the more plausible explanation for the inclusion of the "product" requirement in § 1832 but not § 1831 is that Congress needed to supply a basis for federal jurisdiction for § 1832, whereas the jurisdictional nexus for § 1831 was provided by its focus on the actions of foreign governments."). The indictment's failure to correctly allege jurisdiction means that the Court lacks the express authority to hear the case. *See, e.g.*, *United States v. Chambers*, 944 F.2d 1253, 1258 (6th Cir. 1991), *superseded by sentencing guideline*, Fed. Sentencing Guidelines Manual § 2D1.5(a) (1992) ("[T]he district court possessed subject-matter jurisdiction with respect to [defendant's cases] only if there exists some specific constitutional or statutory provision expressly or impliedly conferring such jurisdiction.").

## B. Dismissal of Count 2 is Necessary to Avoid a Fifth Amendment Violation

Count 2 must be dismissed in order to avoid a violation of Sinovel's right under the Fifth Amendment's Grand Jury Clause. *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, otherwise infamous crime, unless on a presentment or indictment of a grand jury . . .").

Under the Fifth Amendment, "*all* elements of the offense [must] have been considered and found by the grand jury." *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (emphasis added); *see also Stirone v. United States*, 361 U.S. 212, 218-19 (1960) ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment."); *United States v. Downer*, 143 F.3d 819, 823 (4th Cir. 1998) (rejecting government argument that the indictment's language furnished notice to the defendant to overcome the charging defect because, "whatever the facts charged in the indictment may be, an indictment must also show the crime for which a defendant is charged. Otherwise, it is deficient in violation of the Grand Jury Clause.").[1]

The failure to properly charge an offense element warrants dismissal of a defective count—just as it would if the government failed to allege an element altogether. *See, e.g.*, *Pleasant*, 125 F. Supp. 2d at 184 (holding that the government's "failure to *properly* plead the essential elements . . . warrants dismissal of the counts[.]") (emphasis in original). This

---

[1] For this same reason, it cannot be said that the government's mistake is meaningless as a result of Sinovel already having actual notice of what should have been the correct offense element in Count 2. Such an argument ignores the jurisdictional nature of the defect and, if accepted, "would merely encourage defendants with questionable indictments to defer their motions until after trial[, which] would be detrimental to our judicial system and would promote unnecessary trials." *Hooker*, 841 F.2d at 1230.

5

is because such a failure does not "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[se] intended to be punished." *Id.* (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

In this case, the grand jury did not consider *all* of the elements of an EEA offense applicable to the conduct alleged to have occurred on or about March 7, 2011. However, "almost" is not good enough when it comes to jurisdiction. As a result of Count 2's failure to use the correct jurisdictional offense element from the 1996 EEA, the true-bill as to Count 2 is faulty and will violate the Grand Jury Clause if the count proceeds to trial.

### C. The Government Has Effectively Conceded That Count 2 is Defective

The government is aware that Count 2 contains a fatal error. Rather than notify the Court of its error, however, the government has attempted to fix the constitutional problem through its proposed jury instructions. In its Count 2 instruction, the government requests to swap in the jurisdictional offense element from the 1996 EEA (rather than the 2012 EEA that the grand jury considered).[2] *See* Dkt. 323 at 17 ("6. The trade secret was related to or included in a product that is produced for or placed in interstate or foreign commerce."). The government's suggested cure is insufficient as a constitutional matter.

It is axiomatic that "[n]either [jury] instructions nor a petit jury verdict can satisfy after the fact the Fifth Amendment right to be tried upon charges found by a grand jury." *Hooker*, 841 F.2d at 1232 (citing *Stirone*, 361 U.S. at 219); *see also Pleasant*, 125 F. Supp. 2d at 185 ("The United States next contends that any confusion caused by the garbled

---

[2] The government devotes nearly an entire page of source citations in support of its Count 2 instruction, but it curiously fails to alert the Court that its proposed jurisdictional offense element materially differs from the indictment. This failure was not accidental, as reflected in its cryptic citation to the statute: "18 U.S.C. § 1832(a)(2) (*as in effect until December 28, 2012*)." Dkt. 323 at 17 (emphasis added).

6

indictment can be cured by a jury instruction. That approach likewise would require the Court to rewrite the indictment or permit the United States to do so and hence is not a viable solution.").

Furthermore, a corrective jury instruction would result in an improper constructive amendment of the indictment. Simply put, "[a]n indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Gibson*, 924 F.2d 1053, \*3 (4th Cir. 1991) (Table) (citations omitted). In this case, the variance between the 2012 jurisdictional element that the grand jury found and the 1996 version of the EEA is material—whereas the 1996 EEA requires the government to prove a trade secret is related to or *included in a product* that is *produced for* or *placed in* interstate or foreign commerce, the 2012 EEA only requires proof that a trade secret is related to *a product or service used in* or *intended for use in* interstate or foreign commerce.

This variation is not mere wordsmithing—the 2012 EEA fundamentally changed the statute's jurisdictional hook. It does away with the jurisdictional requirement that a trade secret's product was put into interstate or foreign commerce (*i.e.*, "produced for or placed in"). Rather, under the amended statute, the government must merely show that a trade secret's product was "used in," or even more generously, simply "intended for use in" interstate or foreign commerce. These significant changes were intended by Congress to avoid a "narrow reading" of the law that made prosecutions under the 1996 EEA more difficult. *See* 158 Cong. Rec. S6978-03, at S6978 (Nov. 27, 2012) ("The court held that the Economic Espionage Act provision applies only to trade secrets that are part of a product

that is produced to be placed in interstate commerce. Because the company's proprietary software was neither placed in interstate commerce, nor produced to be placed in interstate commerce, the law did not apply-even though the stolen source code was part of a financial trading system that was used in interstate commerce every day…The clarifying legislation that the Senate will pass today corrects the court's narrow reading to ensure that our federal criminal laws adequately address the theft of trade secrets related to a product or service used in interstate commerce. It is a straightforward fix…"). The fact that the grand jury indicted Sinovel under a materially less stringent version of the EEA—that is, the 2012 EEA—makes the jurisdictional flaw all the more glaring here.

A corrective jury instruction is also inappropriate because there is no reason the government cannot seek a superseding indictment from a grand jury that correctly pleads Count 2. Indeed, "the indictment has been static and fixed for more than four years[.]" Dkt. 318 at 1. To try this case with a defective Count 2 and a corrective jury instruction—only to see a reversal upon appeal in the event of a conviction—is an "enormous waste of resources." *Hooker*, 841 F.2d at 1232 (ruling that the government's failure to obtain a superseding indictment to correct a defective indictment and the use instead of a corrective jury instruction "resulted in an enormous waste of resources by the court, the government, and the defendant").

Thus, dismissal is the only remedy to address the jurisdictional defect in Count 2.

## IV. CONCLUSION

Based on the forgoing, the Court should dismiss Count 2 of the indictment. In the event that the government suggests that Count 2 is valid and does not require dismissal, the Court should order the government to produce forthwith the grand jury transcript reflecting

the offense-element instructions provided by the government and conduct an evidentiary hearing.[3]

Dated: September 29, 2017

Respectfully submitted,

ALSTON & BIRD LLP

*s/ Jeffrey E. Tsai*
MICHAEL L. BROWN
1201 W. Peachtree St., Ste. 4900
Atlanta, GA 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
mike.brown@alston.com

JEFFREY E. TSAI
560 Mission St., Ste. 2100
San Francisco, CA 94105
Tel: (415) 243-1000
Fax: (415) 243-1001
jeff.tsai@alston.com

ADRIENE PLESCIA LYNCH
ALEXANDER AKERMAN
333 S. Hope St., 16th Fl.
Los Angeles, CA 90071
Tel: (213) 576-1000
Fax: (213) 576-1100
adriene.lynch@alston.com
alex.akerman@alston.com

*Counsel for Specially-Appearing Defendant Sinovel Wind Group Co., Ltd.*

---

[3] Courts have regularly granted such access—even without a showing of particularized need. *See, e.g.*, *United States v. Belton*, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) (collecting cases). In this case, disclosure is appropriate in light of the discrepancy between dates of the charged conduct (March 7, 2011) and the charged statute (December 28, 2012) in Count 2, as well as the government's confession of error as evidenced by its curative jury instruction.