UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>vs.<br><br>**SINOVEL WIND GROUP CO., LTD.**, *et al.*,<br><br>Defendants. | Case No. 13-cr-84-jdp |

## SPECIALLY-APPEARING DEFENDANT SINOVEL WIND GROUP CO., LTD.'S MOTION FOR CONTINUANCE OF JANUARY 8, 2018, TRIAL SETTING

Specially-appearing defendant Sinovel Wind Group Co., Ltd. ("Sinovel"), respectfully submits its Motion for Continuance of January 8, 2018, Trial Setting.[1]

### I.     INTRODUCTION

Sinovel and undersigned counsel understand the significance of seeking a continuance of the trial setting.[2] The defense has worked diligently to avoid having to come to the Court with this request, but unforeseen and recent circumstances related to turnover on the defense team have put Sinovel and counsel in a position of having no choice but to seek additional time to adequately prepare.

---

[1]     The Court granted Sinovel leave to file this motion during the November 8, 2017, telephonic conference.

[2]     The government first sought a continuance in this matter on August 19, 2016 (Dkt. 155) as a result of a discovery issue with the government's evidence. Subsequently, on May 22, 2017, the defense sought a continuance. *See* Dkt. 241. The government did not oppose the defense's continuance because the government was still reviewing additional discovery for production. *See* Dkt. 251 & 252.

Following the only continuance that Sinovel sought (in May 2017), the defense has made best efforts to be ready for trial in January. Although much of this activity occurred behind the scenes, it was outwardly evidenced, for example, by extensive new briefing, its recent request for a hearing on all pending motions (Dkt. 326), and another recent two-day source code review at the FBI's offices in October 2017. Despite these and many other efforts in preparation of trial, the defense has recently lost 60 percent of its team, including lead trial counsel. All of this was unpredictable and unavoidable.

This is a complicated, sprawling case that involves dense technical facts, hundreds of thousands of pages of documents in numerous languages and will feature at least 30 government witnesses at trial. Indeed, despite investigating this case since at least 2012, the government is still producing documents in discovery to the defense. The complexity of this case is significant, and the amount of time the defense has had to prepare is less than half of the amount of time that the government has been working on this case.

The defense requests a modest continuance of eight weeks to Monday, February 26, 2018, in order to complete its defense team for trial and for the new team members to master the facts and issues in this case. In light of the government's expectation that the trial will last two weeks, and a possible defense case of one week or less, the evidence should be completed within the first quarter of 2018.

## II.     LEGAL STANDARD

A district court has the power to continue the trial date. *See United States v. Williams*, 576 F.3d 385, 388–89 (7th Cir. 2009). When deciding a motion to continue, the court may consider a non-exhaustive list of factors, including the likelihood of prejudice from denial of the continuance, the degree of complexity of the case, and the availability of discovery from the prosecution. *See United States v. Shields*, 789 F.3d 733, 748 (7th Cir.

2015). The decision whether to grant or deny a continuance lies within the sound discretion of the trial court, but the court cannot have a "myopic insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. Isaacs*, 593 F.3d 517, 525 (7th Cir. 2010) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

The court should carefully assess whether to grant a continuance because the arbitrary denial of a continuance may not only result in prejudice to the defendant—which on its own constitutes reversible error—but may also rise to the level of violating the defendant's due process rights. *See Williams*, 576 F.3d at 391; *see also United States v. King*, 664 F.2d 1171, 1173 (10th Cir. 1981) ("Inadequate case preparation can jeopardize an accused's right to effective assistance of counsel" and can "be caused by unreasonable time constraints imposed by a trial court").

### III.   ARGUMENT

The defense has experienced significant and unexpected staffing challenges that have materially impacted its ability to be adequately prepared for trial by the current January 8, 2018, trial setting. Moreover, the additional deadlines and rulings from the Court on November 8, 2017, have resulted in a change in defense strategy that requires a reasonable amount of extra preparation time.

In light of the unforeseen circumstances and defense counsel's continued good-faith efforts to prepare for trial, a continuance until February 26, 2018, is reasonable under the circumstances.

**A.   Defense Team Turnover Has Caused a Need for Additional Time**

The defense team's staffing turnover has impacted its ability to be adequately prepared for trial. In mid-July 2017, the president nominated lead trial counsel Michael Brown for a judgeship to the U.S. District Court for the Northern District of Georgia. As a

3

result of Mr. Brown's factual knowledge of the case and history with the litigation, the defense team continued its preparations despite the nomination in light of the trial date and given the timing uncertainty of the Senate confirmation process.

A Senate Judiciary hearing was eventually held on Mr. Brown's nomination on September 20, 2017, after which the decision was made for him to be formally withdrawn from this matter in October 2017. Given the enormity of this litigation, Mr. Brown must be replaced with another attorney on the defense team, which has also seen the departure of the team's original senior associate attorney. To be sure, the defense was pro-active through the late summer and early fall in identifying potential replacements for Mr. Brown suitable for this criminal representation—who could, among other things, devote time away from other matters in order to devote the significant time needed for a matter of this magnitude)—once the timeline of his nomination became more clear by virtue of his confirmation hearing.

And, in the past several days, we also learned that the team's sole trial paralegal must take a temporary leave for a medically necessary and urgent surgery. She has been advised that she must miss a period of time from work to recuperate, which complicates preparations so close to trial. She alone has been responsible for establishing and maintaining the volumes of electronic and hard-copy records in this case and has devoted a majority of her time on this case since its inception. Needless to say, the defense team will rely upon her substantially at trial.

Given the significance of this criminal matter, it is reasonable for new members of the defense team to have additional time to get up to speed on a case that the government has been investigating for years. Indeed, the government has three lawyers working this

matter—two of whom have been involved since the first arraignment and one of whom was involved during the investigation as early as 2012. Despite the government's claim that the defense team should simply call up another attorney from Alston & Bird to fill defense-table seats, the same unlimited resources available to the Department of Justice and its thousands of lawyers do not apply to a private law firm and an overseas client under criminal indictment. Even with the defense team's diligent efforts to replace its attorneys, and now its new task to replace (or manage for a period of time without) its trial paralegal, additional time is vital in order to put the defense in at least a reasonable position to have its new attorneys ready for trial.

Importantly, the circumstances of the defense team's departures were not planned or designed, and the defense respectfully requests that Sinovel not suffer unreasonable consequences that were unforeseen and have been addressed with reasonable care and diligence by counsel.

### B. The Defense Will Change its Strategy in Light of the Court's November 8, 2017, Rulings and Deadlines

The additional deadlines and evidentiary rulings from the November 8, 2017, hearing will result in changes to the defense strategy that require a reasonable amount of additional preparation time. Undersigned counsel continues to work diligently in preparation for trial, and the motions filed in recent months are an outward reflection of this effort. However, recent rulings from the Court have caused material changes for the defense of this case.

As an initial matter, the defense is required to submit supplemental expert disclosures to the government by November 21, 2017. The defense's disclosures tracked those of the government's putative experts, and the defense experts are rebuttal in nature

5

(*i.e.*, responsive to the actual testimony that government experts would provide). The defense must dedicate resources to provide these supplemental disclosures, which are impacted by the Court's other rulings and the change in defense strategy. Additionally, the defense is now required to provide defense-case evidence to the government by December 8, 2017. The defense still does not know if it will put on a case, and this will need to be considered further in light of the Court's evidentiary rulings on November 8, 2017. All of this complicates the process for determining evidence by the December 8th deadline because the defense anticipates that it will have to reveal several potential defense strategies in order to comply with the Court's November 21, 2017, and December 8, 2017, deadlines.

Supplemental time is also necessary because the evidentiary rulings, coupled with revealing new information from the government, require a change in defense strategy. During the November 8th hearing, the government confirmed that its trial theory regarding the "trade secret" would expand beyond the "PM3000 source code" charged and limited by Count 2 in the indictment. Indeed, during the hearing, the government indicated a belief that the alleged trade secret was also the PLC software and all of the LVRT technology. The defense has been preparing to defend against Count 2's narrower and more specific statement that the "PM3000 source code" is the trade secret. *See* Dkt. 332 (alleging the "trade secret" as "*specifically*, the PM3000 source code") (emphasis added).

Sinovel has been diligently endeavoring to discern what the meets and bounds of the LVRT technology at issue really is, where it is housed, how it operates, and whether it genuinely qualified as a trade secret. It sought further particularity because, despite these efforts, the answer to what the LVRT technology encompasses was not readily apparent to

6

leading experts in the industry. Understanding now that there will be no further specification of the claimed trade secret, Sinovel's experts anticipate that significant additional time will be needed to conduct the analysis and testing sufficient to put defendant in a position to mount even a basic defense to the trade secret claim.

Likewise, the defense is still receiving new discovery from the government. For example, as recently as November 6, 2017, the government produced almost a thousand pages of grand jury testimony and exhibits—a result of a material charging error that the government never identified since it indicted this case. *See* Dkt. 345 (enclosing United States v. Sinovel 17488-18311); *see also* Dkt. 327 (producing SINOVEL TRC 866-1096); Dkt. 319 (September 22, 2017, Supplemental Fisher Report). Although the government has criticized the time that Sinovel has needed to prepare its trial defense, the government has regularly continued to produce significant discovery—despite the amount of time the government has investigated this case. Under this circumstance, the defense requires a reasonable amount of additional time to process and review the additional information.

## IV.     CONCLUSION

Based on the foregoing, the Court should grant Sinovel's Motion for Continuance of Trial Setting to Monday, February 26, 2018.

Dated: November 13, 2017                         Respectfully submitted,

                                                 ALSTON & BIRD LLP

                                                 *s/ Jeffrey E. Tsai*
                                                 JEFFREY E. TSAI
                                                 560 Mission St., Ste. 2100
                                                 San Francisco, CA 94105
                                                 Tel: (415) 243-1000
                                                 Fax: (415) 243-1001
                                                 jeff.tsai@alston.com

ALEX AKERMAN
333 S. Hope St., 16th Fl.
Los Angeles, CA 90071
Tel: (213) 576-1000
Fax: (213) 576-1100
alex.akerman@alston.com

*Counsel for Specially-Appearing Defendant
Sinovel Wind Group Co., Ltd.*