IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SINOVEL WIND GROUP CO., LTD.,

    Defendant.

OPINION & ORDER

13-cr-84-jdp

---

On November 8, 2017, the court held a hearing on the parties' pending motions. For the reasons stated during the hearing, the court ruled on all pending motions save two: the government's motion to admit out-of-court statements, Dkt. 215, and the government's motion to admit a video of the search of Dejan Karabasevic's Beijing apartment, Dkt. 236. Since the hearing, Sinovel has moved to continue the trial. Dkt. 347. The court will address each motion in turn.

**A. Out-of-court statements**

The government seeks a pretrial ruling on the admissibility of 128 out-of-court statements, which are mostly emails and text chats between Sinovel's unindicted co-defendants. The authenticity of all but one of these exhibits has already been established; the sole remaining issue is their potential hearsay status. (The authenticity of the video of the search of Karabasevic's apartment will be discussed below.) The parties have thoroughly addressed the admissibility of each individual statement, *see* Dkt. 300-1, but the court will group the statements into six categories based on the government's main arguments for their admissibility: (1) statements made by a co-conspirator; (2) statements made by an agent;

(3) adopted statements; (4) statements about a then-existing state of mind; (5) present sense impressions; and (6) evidence not offered as assertions of fact.

The first category, co-conspirator statements, includes exhibits 3, 6, 10, 12, 18, 24, 25, 28–34, 36–38, 43–45, 48–50, 52–56, 58–64, 69–73, 75–77, 79, 80, 84–87, 90, 92, 93, 97–100, 106–112, and 115–117—statements in emails and text chats by Dejan Karabasevic, Julia Ming, Zhao Haichun, and Su Liying. The parties agree that the government's motion fulfills its duty under *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), to proffer the evidence it intends to admit under Federal Rule of Evidence 801(d)(2)(E), which provides that statements made by a party's co-conspirator during and in furtherance of the conspiracy are not hearsay. Sinovel's main complaint is that the government fails to offer any evidence independent of the out-of-court statements to establish the conspiracy. It argues that the point of a *Santiago* hearing is to put on admissible evidence of the conspiracy and the party's participation in it. It's true that the co-conspirator's statement may not establish the conspiracy and participation in it on its own, but it may do so in combination with other evidence, and that other evidence need not be admissible. *See id.* at 1133–34 (explaining that the question whether a conspiracy has been established is considered under Rule 104(a), which allows "a trial judge to base his 'determination' on hearsay and other inadmissible evidence"). Here, evidence independent of the co-conspirators' statements establishes that Dejan Karabasevic used to work for AMSC; that he copied the PM3000 source code from the AMSC computer system, adapted it, and then gave it to Sinovel; that he entered into a $1.7 million contract with Sinovel; that around the same time, Sinovel set up a contract between Karabasevic and a Chinese blade company; and that Julia Ming, Zhao Haichun, and Su Liying all worked for Sinovel. This is circumstantial evidence sufficient to establish the existence of a conspiracy and

each of the declarants' participation in it. The co-conspirators' statements each confirm the existence in the conspiracy and establish that the statements were each made in furtherance of the conspiracy. For example, in exhibit 10, Karabasevic sends Zhao a copy of his non-compete agreement with AMSC; in exhibit 25, Ming explains to Karabasevic that to get around the non-compete clause, Sinovel will arrange for Karabasevic to enter into a fake contract with another company. So the court will grant the government's motion as to this category of statements.

A similar analysis applies to the second category, statements by an agent, which includes exhibits 11, 47, 65–68, 74, 78, 82, 83, 88, 89, 91, 94–96, 101, 121, and 126—Karabasevic's statements in emails, text chats, and notes. Rule 803(d)(2)(D) requires some other evidence that, in combination with the agent's statement, establishes the existence and scope of the agency or employee relationship. Independent evidence establishes that Sinovel paid Karabasevic to obtain and modify the PM3000 source code. Karabasevic's statements concern that subject and therefore are "on a matter within the scope of" the agency relationship. *See Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003). So the court will grant the government's motion as to this category of statements.

The third category, statements adopted by Sinovel, includes one part of exhibit 121: a report authored by GL Garrad Hassan at Sinovel's request, which was emailed by a Sinovel employee to a potential Sinovel customer. This report is admissible under Rule 803(d)(2)(C), which provides that statements that "the [opposing] party manifested that it adopted or believed to be true" are not hearsay. So the court will grant the government's motion as to this category of statements.

The fourth category, statements about a state of mind, includes exhibits 1, 4, 5, 8, 13, 15, 16, 20–23, 26, 27, 39, 41, 42, 46, 57, 101, 102, 122, and 124—again, statements in emails

3

and text chats by Karabasevic, Ming, Zhao, Su, and other Sinovel employees. The government argues that these statements are admissible under Rule 803(3), which provides that statements "of the declarant's then-existing state of mind (such as motive, intent, or plan)" are not excluded by the rule against hearsay. The statements proffered by the government clearly meet this definition. For example, Karabasevic describes his plans to his girlfriend in an email:

> At 7:45 pm I will take off in Munich, towards Beijing, our Beijing. There I will be welcomed by bcg, colleague from Sinovel's HR, who will take me to our apartment in Beijing. I hope she will have enough time to show me the nearest area, since I need some basic shopping the same day. Afterwards I will start working for my new company. I will have 3 working days in coming week. Then, I will wellcome you, my darling, on Saturday.

Dkt. 219-15. Sinovel argues that Rule 803(3) requires a showing that "the declarant had no chance to reflect—that is, no time to fabricate or to misrepresent his thoughts." *United States v. Jackson*, 780 F.2d 1305, 1316 (7th Cir. 1986) (quoting *United States v. Layton*, 549 F. Supp. 903, 909 (N.D. Cal. 1982)). But the Seventh Circuit has enforced this requirement only when the proffered statement is self-serving and therefore unreliable—in this case, if Sinovel was attempting to introduce these statements to support its defense. *See, e.g., id.* at 1315; *see also* 2 *McCormick on Evidence* §§ 270, 274 n.8 (Kenneth S. Broun ed., 7th ed.). The rationale for requiring no chance for reflection falls apart when, as in this case, a party wishes to introduce the statement made by the opposing party or its co-conspirator. There is no reason to suspect, for example, that Karabasevic reflected on the possibility that he might be caught in his acts of espionage and so wrote an email to his girlfriend misrepresenting his plans to move to Beijing to work for Sinovel. So the court will grant the government's motion as to this category of statements.

4

The fifth category of statements, present sense impressions, includes exhibits 19, 20, 103, and 127—more of Karabasevic's statements and the narration of the videotaped search of Karabasevic's apartment. The government argues that these statements are admissible under Rule 803(1), which provides that statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it," are not excluded by the rule against hearsay. Sinovel complains about a lack of foundation for these statements—essentially, it argues that the government hasn't shown that Karabasevic was actually describing a real event or condition. For example, it argues that the government hasn't shown that Karabasevic wrote "I am in Beijing now" while he was actually in Beijing. *See* Dkt. 300-1, at 41–42. But the statements themselves indicate that Karabasevic wrote them when, or immediately after, he was experiencing the conditions he describes, and Sinovel cites no authority requiring anything more. So the court will grant the government's motion as to this category of statements. (The authenticity of the video, exhibit 127, will be analyzed below.)

The sixth category of evidence includes exhibits 2, 7, 14, 17, 18, 24, 29, 35, 36, 40, 44, 51, 81, 84, 87, 104, 105, 110, 113, 114, 118, 120, 125, 127, and 128. The government argues that these exhibits, or portions of them, do not meet the definition of hearsay because they are not offered to prove the truth of the matter asserted. Sinovel does not challenge the government's position directly but reiterates its complaint about a lack of foundation—for example, it complains that "the government has not laid any foundation as to the identity of the authors of the communication" and that "the government has laid no foundation as to the truth of any of the facts asserted in the quotes." *E.g.*, Dkt. 300-1, at 4. Again, the exhibits themselves offer adequate foundation—for example, the email addresses indicate the authors of the communication—and Sinovel cites no authority requiring anything more. The

5

government need not establish the truth of the facts asserted because the government is not offering these exhibits for that purpose. So the court will grant the government's motion as to this category of statements.

But the court will deny the government's motion as to exhibits 105 (an email from Emma in Sinovel's International Recruiting Department), 108 (a report on the LVRT retrofit attached to an email from Zhao), 116 (a PowerPoint on the LVRT retrofit attached to an email from Zhao), 117 (a document about the LVRT retrofit attached to an email from Zhao), 119 (a spreadsheet summarizing Sinovel's progress with the LVRT retrofit), and 123 (minutes from a meeting of Sinovel's board of directors purportedly filed with the Shanghai Stock Exchange Traded Companies). The government argues that these exhibits are statements by an agent or co-conspirator, but it does not point to independent evidence that these exhibits were created by an agent or co-conspirator, so neither rule applies. None of the exceptions argued by the government apply, either. Exhibit 123 features hearsay-within-hearsay: the minutes themselves are a written recording of statements purportedly made at a meeting, and the government is offering them for their truth, to show that Sinovel's board of directors actually made the motions and resolutions recorded in the minutes. Perhaps some of the statements at the meeting could fall under the state-of-mind exception, discussed below, but the minutes are still hearsay. They are not public records because they were not made by a public office and there's no indication that there was a legal duty to report them. Likewise, the email in exhibit 105 is being offered for the truth of the statements in the email. The bank receipt attached to the email is not hearsay, but the email explaining what the receipt is, as well as Emma's translation of the receipt, are inadmissible hearsay. As for exhibits 108, 116, and 117, Zhao's emails are co-conspirator's statements, but the report, PowerPoint, and document attached to the emails

do not appear to be authored by Zhao, and contrary to the government's assertion, the majority of the report describes past work on LVRT, not Sinovel's plans or other state of mind. So the court will deny the government's motion as to the email and translation in exhibit 105; the attachments in exhibits 108, 116, and 117; and all of exhibits 119 and 123. The government has not explained why these exhibits might be admitted under Rule 807, so the court will not address that issue here.

**B. Video**

The government seeks a pretrial ruling on the admissibility of the video of the search of Karabasevic's apartment. The video poses no hearsay problems, as discussed above. The issue here is authenticity. The government indicates that this video was recorded on July 9, 2011, by an AMSC employee and three private investigators while they searched Karabasevic's Beijing apartment using a key that Karabasevic provided. The government seeks to admit an edited version of the video that contains segments "that focus on the items recovered and avoids unnecessarily identifying the search participants, at least one of whom fears retribution in China." Dkt. 236, at 8.

The government bears the burden of producing evidence sufficient to support a finding that the video is what the government claims it is. Fed. R. Evid. 901. It may do so in several ways, including through the "distinctive characteristics of the item, taken together with all the circumstances." *Id.* "For video records . . . the [government] should also show that the camera functioned properly, the operator was competent in operating the equipment, and the recording fairly and accurately represented the scene depicted." *United States v. Cejas*, 761 F.3d 717, 723 (7th Cir. 2014).

The government contends that indicia of Karabasevic's identity found during the search, which is shown on the video, establishes that the video actually depicts Karabasevic's apartment. This evidence is reinforced, according to the government, by similarities between the video and still images of a potential apartment sent to Karabasevic before he arrived in Beijing and still images taken by Karabasevic of his apartment while he was living there. The court agrees: the segments of the video that show indicia of Karabasevic's identity and that are filmed in the rooms also depicted in the still images were clearly recorded in Karabasevic's apartment. But some segments do not show indicia of Karabasevic's identity and were recorded in unfamiliar rooms that are not depicted in still images—the court will refer to these as the unfamiliar segments. Because the edited video cuts from one segment to the next, the viewer cannot determine whether the unfamiliar segments were recorded in the same apartment. And because the video does not contain a date or time stamp, the viewer cannot determine when *any* of it was filmed, let alone whether the unfamiliar segments were recorded on the same day or around the same time as the familiar segments. In other words, there's no way to tell were the unfamiliar segments were recorded, and there's no way to tell whether any segments were recorded on July 9, 2011, as the government claims.

The Seventh Circuit has affirmed the exclusion of a similar undated video without some other evidence, such as the testimony of the video recorder, to establish the video's authenticity. *See Griffin v. Bell*, 694 F.3d 817, at 827 (7th Cir. 2012). Just like the video in *Griffin*, which lacked a date or time stamp and "showed only a small part of the incident and included gaps," the edited video of the apartment search does not establish that it fairly and accurately represents the July 9, 2011 search. *Id.* at 820. The government has not established

its authenticity. That's not to say that the edited video is conclusively inadmissible. But the court will deny the government's motion for a pretrial finding that it is genuine.

**C. Continuing the trial**

Trial is scheduled to begin on January 8, 2018. Sinovel asks the court to delay trial until February 26, 2018. The decision to continue trial is discretionary. Courts weigh several factors when ruling on a motion to continue, including "(1) the amount of time available for preparation; (2) the likelihood of prejudice from denial of the continuance; (3) the defendant's role in shortening the effective preparation time; (4) the degree of complexity of the case; (5) the availability of discovery from the prosecution; (6) the likelihood a continuance would have satisfied the movant's needs; and (7) the inconvenience and burden to the district court and its pending case load." *United States v. Shields*, 789 F.3d 733, 748 (7th Cir. 2015).

Sinovel contends that it does not have enough time to prepare for trial and will suffer prejudice without a continuance. First, it explains that its lead counsel withdrew in October 2017 after being nominated for a federal judgeship, that its original senior associate attorney withdrew sometime before then, and that its "sole trial paralegal must take a temporary leave for a medically necessary and urgent surgery." Dkt. 347, at 4. But its lead counsel was nominated in July 2017, and Sinovel has had ample time and resources to prepare for a replacement. And Sinovel does not explain when the paralegal will be unavailable or for how long, so it's not clear whether the temporary leave will significantly affect Sinovel's trial preparations. But even if the paralegal were off the case through trial, that would not warrant moving the trial date. Nor does the departure of a senior associate. The 800 attorneys at Alston Bird are not completely fungible. But neither are they irreplaceable. The turnover in the trial team does not warrant changing the trial date.

Second, Sinovel explains that the court's rulings, delivered at the November 8 hearing, "will result in changes to the defense strategy that require a reasonable amount of additional preparation time." *Id.* at 5. Specifically, it argues that it must shift its defense in light of the government's confirmation "that its trial theory regarding the 'trade secret' would expand beyond the 'PM3000 source code.'" *Id.* at 6. And it complains about the government's ongoing discovery disclosures and the November 21 deadline for supplemental expert disclosures and December 8 deadline for Rule 16 disclosures set by the court. Nothing in the court's ruling of November 8 radically expound or change the scope of this case. Nor does any of the government's recent disclosures. And all this comes with two months to go before trial. The government has arranged for about 30 witnesses to be at trial, and moving the date would be highly prejudicial. The court will deny Sinovel's motion to move the trial date.

ORDER

IT IS ORDERED that:

1. Defendant Sinovel Wind Group Co., Ltd.'s motion for a *Santiago* hearing, Dkt. 130, is DENIED.

2. Defendant's motion to quash service, Dkt. 205, is DENIED.

3. The government's motion to compel discovery, Dkt. 211, is GRANTED. Defendant must fulfill its Rule 16 disclosure obligations by December 8, 2017.

4. The government's motion for admission of out-of-court statements, Dkt. 215, is GRANTED in part, consistent with the opinion above.

5. Defendant's motion to compel expert disclosures, Dkt. 226, is DENIED.

6. The government's motion for admission of electronic and documentary evidence, Dkt. 236, is GRANTED in part, consistent with the opinion above.

7. Defendant's motion to compel production of evidence, Dkt. 239, is DENIED.

8. The government's motion to compel expert disclosures, Dkt. 295, is GRANTED as to Michael Bandemer and Craig Christenson. Defendant must supplement its disclosures as to those two experts by November 21, 2017.

9. Defendant's motion for a bill of particulars, Dkt. 317, is DENIED as moot.

10. The government's motion to strike, Dkt. 318, is DENIED as moot.

11. Defendant's renewed motion for a bill of particulars and to strike surplusage, Dkt. 340, is DENIED.

12. Defendant's motion to dismiss, Dkt. 325, is DENIED as moot.

13. Defendant's motion for a hearing, Dkt. 326, is GRANTED.

14. Defendant's motion to continue trial, Dkt. 346, is DENIED.

Entered November 15, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge